Slip Op. 16 - 86

UNITED STATES COURT OF INTERNATIONAL TRADE

```
CAPELLA SALES & SERVICES LTD.,

          Plaintiff,

                v.

UNITED STATES,

          Defendant.
```

Before: Donald C. Pogue,
        Senior Judge

Court No. 15-00318

OPINION

[Action dismissed for failure to state a claim upon which relief
can be granted.]

Dated: September 14, 2016

        Irene H. Chen, Chen Law Group, LLC, of Rockville, MD,
and Mark B. Lehnardt, Lehnardt & Lehnardt, LLC, of Liberty, MO,
for the Plaintiff.

        Aimee Lee, Senior Trial Counsel, Commercial Litigation
Branch, Civil Division, U.S. Department of Justice, of New York,
NY, for the Defendant.  Also on the brief were Benjamin C.
Mizer, Principal Deputy Assistant Attorney General, Jeanne E.
Davidson, Director, and Reginald T. Blades, Jr., Assistant
Director.  Of counsel were Jessica M. Link, Attorney, Office of
the Chief Counsel for Trade Enforcement & Compliance, U.S.
Department of Commerce, of Washington, DC, and Edward N. Maurer,
Deputy Assistant Chief Counsel, International Trade Litigation,
U.S. Customs & Border Protection, of New York, NY.

        Alan H. Price, Robert E. DeFrancesco, III, and Derick
G. Holt, Wiley Rein LLP, of Washington, DC, for Defendant-
Intervenor.

**Pogue, Senior Judge**: In this action, Capella Sales &

Services Ltd. ("Plaintiff" or "Capella")[1] again[2] challenges the

assessment of countervailing duties ("CVD"), at the rate of

374.15 percent ad valorem, on four of its entries of aluminum

extrusions from the PRC.  The U.S. Department of Commerce

("Defendant" or "Commerce") assessed these duties by applying

the all-others rate calculated in Aluminum Extrusions from the

[PRC], 76 Fed. Reg. 18,521 (Dep't Commerce Apr. 4, 2011) (final

affirmative countervailing duty determination) ("Final CVD

Determination"), rather than the (lower) "lawful [cash] deposit

rate" calculated subsequently on remand and redetermination of

the same Final CVD Determination pursuant to litigation to which

Capella was not a party. Compl., ECF No. 3, at ¶¶ 56, 58.

The result in this second action is directed by the

Court's opinion in Capella I:  Because Capella's complaint

challenges Commerce's administration and enforcement of a CVD

rate, the court has jurisdiction under 28 U.S.C. § 1581(i)

(2012).  However, because Plaintiff did not participate in, and

have liquidation of its entries enjoined pursuant to, the

litigation that resulted in the "lawful rate" calculated on

---

[1] Capella is "an importer of aluminum extrusions" from the
People's Republic of China ("PRC"). Compl., ECF No. 3, at ¶ 50.

[2] In Capella Sales & Servs., Ltd. v. United States, __ CIT __,
Slip Op. 16-72 (July 20, 2016)("Capella I"), the court, pursuant
to USCIT Rule 12(b)(6), dismissed Capella's first challenge for
failure to state a claim upon which relief can be granted.

remand and redetermination, it cannot claim entitlement to that

rate for entries made prior to the effective date of the revised

rate. See 19 U.S.C. §§ 1516a(c)(1), 1516a(e) (2012); Compl., ECF

No. 3, at ¶ 7; cf. Capella I, __ CIT at __, Slip Op. 16-72 at 3.

Plaintiff has, therefore, failed to state a claim upon which

relief can be granted. USCIT Rule 12(b)(6).

## BACKGROUND

The background of this case is, in almost all

respects, identical to the background provided in the Court's

opinion in Capella I, __ CIT at __, Slip. Op. 16-72 at 3-11.

For ease of reference, we note here only that Commerce's

underlying CVD determination on aluminum extrusion from the PRC

calculated an all-others rate of 374.15 percent ad valorem.

Final CVD Determination, 76 Fed. Reg. at 18,523.  Pursuant to

the associated CVD Order, Commerce instructed U.S. Customs and

Border Protection ("Customs") to collect cash deposits for non-

individually investigated companies at that all-others rate.

Aluminum Extrusions from the [PRC], 76 Fed. Reg. 30,653, 30,655

(Dep't Commerce May 26, 2011) (countervailing duty order) ("CVD

Order").  Some respondents appealed this determination to this

Court in MacLean-Fogg v. United States, Consol. Ct. No. 11-

00209,[3] as a result of which, after multiple judicial opinions,[4]

including an appeal to the Court of Appeals for the Federal

Circuit ("CAFC"),[5] and agency redeterminations,[6] the all-others

rate was reduced to 7.37 percent (the post-MacLean-Fogg rate).

[Fourth] Results of Redetermination Pursuant to Ct. Remand,

Consol. Ct. 11-209, ECF Nos. 124-1 (conf. ver.) & 125-1 (pub.

ver.).

        While the above was ongoing, Capella made four entries

of aluminum extrusions from the PRC – two on November 28, 2011,

one on March 20, and one on June 16, 2012. Capella mistakenly

---

[3] See Summons, Consol. Ct. No. 11-209 ECF No. 1; Compl., Consol.
Ct. No. 11-209, ECF No. 6; see also Order, Consol. Ct. No. 11-
209 ECF No. 26 (consolidation order).  This Court had
jurisdiction under 28 U.S.C. § 1581(c). See MacLean-Fogg Co. v.
United States, __ CIT __, 836 F. Supp. 2d 1367, 1369-70 (2012).

[4] MacLean-Fogg Co. v. United States, __ CIT __, 836 F. Supp. 2d
1367, on reconsideration in part, __ CIT __, 853 F. Supp. 2d
1253 (2012); MacLean-Fogg Co. v. United States, __ CIT __, 853
F. Supp. 2d 1336 (2012); MacLean-Fogg Co. v. United States, __
CIT __, 885 F. Supp. 2d 1337 (2012)("MacLean-Fogg IV"); MacLean-
Fogg Co. v. United States, __ CIT __, 32 F. Supp. 3d 1358
(2014); MacLean-Fogg Co. v. United States, __ CIT __, 100 F.
Supp. 3d 1349 (2015); MacLean-Fogg Co. v. United States, __ CIT
__, 106 F. Supp. 3d 1356 (2015) ("MacLean-Fogg VIII").

[5] MacLean-Fogg Co. v. United States, 753 F.3d 1237 (Fed. Cir.
2014) ("MacLean-Fogg V").

[6] [First] Results of Redetermination Pursuant to Ct. Remand,
Consol. Ct. No. 11-209, ECF Nos. 62-1 (pub. ver.) & 63 (conf.
ver.); [Second] Results of Redetermination Pursuant to Ct.
Remand, Consol. Ct. No. 11-209, ECF No. 80-1; [Third] Results of
Redetermination Pursuant to Ct. Remand, Consol. Ct. No. 11-209,
ECF No. 108-1; [Fourth] Results of Redetermination Pursuant to
Ct. Remand, Consol. Ct. No. 11-209, ECF Nos. 124-1 (conf. ver.)
& 125-1 (pub. ver.).

entered its merchandise as Type 01 (i.e., not subject to AD or

CVD duties) rather than Type 03 (i.e., subject to AD or CVD

duties). Compl., ECF No. 3, at ¶ 7; CBP Forms 7501 reproduced in

Compl., ECF No. 3-1 at attach. 5; Protest, 4601-14-101149 (July

14, 2014), reproduced in Compl. ECF No. 3-1 at attach. 15.

        Capella did not participate in the investigation

underlying the CVD Order or the MacLean-Fogg litigation. Compl.,

ECF No. 3, at ¶ 7 ("Capella was unaware of the CVD Order.").

Nor did Capella participate in the first administrative review

of the CVD Order. Id. at ¶ 10 ("[Capella] was not aware of" the

review and therefore "did not know to request a review").

Capella also did not participate in the second administrative

review of the CVD Order. Id. at ¶ 22.  Based on this lack of

participation, Commerce instructed Customs to liquidate

Capella's entries at their cash deposit rate. CBP Message No.

2209305 (July 27, 2012), reproduced in Compl., ECF No. 3-1 at

attach. 6; CBP Message No. 3197305 (July 16, 2013), reproduced

in Compl., ECF No. 3-1 at attach. 10.[7]

---

[7] Capella's four entries, being covered by the CVD Order but not
subject to any administrative review or injunction in the
pending the MacLean-Fogg litigation, were subject to automatic
liquidation. See Compl., ECF No. 3, ¶¶ 13, 23.  Three of
Capella's four entries have already been liquidated; the fourth,
Capella's June 16, 2012, entry had liquidation enjoined pending
litigation in Capella Sales & Services Ltd. v. United States,
Ct. No. 14-304. Capella I, __ CIT at __, Slip Op. 16-72 at 10 n.
14.

Capella filed its first action with this Court following the CAFC's decision in MacLean-Fogg V, 753 F.3d 1237. Summons, Ct. No. 14-304, ECF No. 1; Compl., Ct. No. 14-304, ECF No. 2.  In that case, as here, Capella challenged Commerce's decision to assess the investigation rate, rather than a rate resulting from the MacLean-Fogg litigation, on its entries. See Capella I, __ CIT at __, Slip Op. 16-72 at 16, 18-19.

While Capella I was pending, Commerce made its fourth and final redetermination in MacLean-Fogg, establishing an all-others rate of 7.37 percent ad valorem. [Fourth] Results of Redetermination Pursuant to Ct. Remand, Consol. Ct. 11-209, ECF Nos. 124-1 (conf. ver.) & 125-1 (pub. ver.).  This Court affirmed. Mac-Lean Fogg VIII, 106 F. Supp. 3d 1356.  Between this affirmance and publication of Commerce's amended final CVD determination in the Federal Register, Capella sent a letter to Commerce arguing that "Commerce should adjust the effective date of the new all-others cash deposit rate of 7.37 percent to apply retroactively to all entries since [Aluminum Extrusions from the [PRC], 75 Fed. Reg. 54,302 (Dep't Commerce Sept. 7, 2010) (preliminary affirmative CVD determination)]." Letter from Capella to Commerce (Oct. 29, 2015) at 2, reproduced in Compl.,

ECF No. 3-1 at attach. 17; see Compl., ECF No. 3, at ¶ 35.[8]

Commerce did not adjust the effective date of the new all-others rate.  Rather, Commerce published notice of the new all-others cash deposit rate with an effective date of November 2, 2015, Am. Final CVD Determination, 80 Fed. Reg. at 69,640-41,[9] and issued corresponding instructions to Customs.[10]  Commerce also issued instructions to Customs to refund cash deposits made in excess of the new rate for entries made before the new cash deposit instructions (November 13, 2015) but after the effective

---

[8] Capella's letter constitutes what Capella claims to be a procedural difference between Capella's challenge here, to the Aluminum Extrusions from the [PRC], 80 Fed. Reg. 69,640 (Dep't Commerce Nov. 10, 2015) (amended final affirmative CVD determination pursuant to court decision) ("Am. Final CVD Determination") and Capella's challenge in Capella I, to Aluminum Extrusions from the [PRC], 77 Fed. Reg. 74,466 (Dep't Commerce Dec. 14, 2012) (notice of court decision not in harmony with final affirmative CVD determination and notice of amended final affirmative CVD determination). Compare Compl., ECF No. 3, at ¶¶ 35, 38, 51 with Am. Compl., Ct. No. 14-304, ECF No. 32-1. As explained below, see note 17, it is a difference of no moment.

[9] This is the final "Timken Notice" for MacLean-Fogg, Consol. Ct. No. 11-209. Am. Final CVD Determination at 69,640 (citing Diamond Sawblades Mfrs. Coal. v. United States, 626 F.3d 1374 (Fed. Cir. 2010) (clarifying Timken Co. v. United States, 893 F.2d 337 (Fed. Cir. 1990)).

[10] See CBP Message No. 5317319 (Nov. 13, 2015) ("Cash Deposit Instructions"), reproduced in Compl., ECF No. 3-1 at attach. 18 ("As a result of [MacLean-Fogg VIII, __ CIT __, 106 F. Supp. 3d 1356], for shipments of aluminum extrusions from the [PRC] entered, or withdrawn from warehouse, for consumption on or after 11/02/2015, [Customs] shall require, for [all others rate] entries, a cash deposit equal to [7.37 percent ad valorem].").

date (November 2, 2015).[11]

      Capella then filed its second action – the instant action – again challenging the CVD rate assessed on its four entries. Summons, ECF No. 1; Compl., ECF No. 3.  Capella challenges Commerce's Am. Final CVD Determination, 80 Fed. Reg. 69,640, the corresponding Cash Deposit Instructions, ECF No. 3-1 at attach. 17, and Refund Instructions, ECF No. 3-1 at attach. 19, as "arbitrary, capricious, and [an] abuse of discretion, or otherwise not in accordance with law" for failing to apply, retroactively to Capella's entries, "the lawful [cash] deposit rate," that is the post-MacLean-Fogg rate of 7.37 percent ad valorem. Compl., ECF No. 3, at ¶¶ 56, 58; see Am. Final CVD Determination, 80 Fed. Reg. at 69,641.

      The Defendant's motion to dismiss is now before the court.  Def.'s Mot. to Dismiss, ECF No. 27.[12]

---

[11] CBP Message No. 5328301 (Nov. 24, 2015) ("Refund Instructions"), reproduced in Compl., ECF No. 3-1 at attach. 19.

[12] Defendant-Intervenor, the Aluminum Extrusion Fair Trade Committee ("AEFTC"), "concurs with and adopts by reference the arguments set forth in [Def.'s Mot. to Dismiss, ECF No. 27]." Def.-Intervenor [AEFTC]'s Resp. to Def.'s Mot. to Dismiss, ECF No. 28, at 1.

**DISCUSSION**

I.   Defendant's Motion to Dismiss Pursuant to USCIT Rule
     12(b)(1) For Lack of Subject Matter Jurisdiction[13]

        As in Capella I, Capella claims jurisdiction here
under 28 U.S.C. §§ 1581(i)(2), (4), Compl., ECF No. 3, at ¶ 38,
framing its action as a challenge to Commerce's decision to not
retroactively apply the "lawful [cash] deposit rate" calculated
pursuant to the MacLean-Fogg litigation to Capella's entries,
id. at ¶ 56.[14]  Defendant again moves to dismiss, under USCIT
Rule 12(b)(1), asserting that Capella's action seeks to
challenge the 374.15 percent rate itself and therefore requires
jurisdiction under § 1581(c). Def.'s Mot. to Dismiss, ECF No. 27
at 19-22.

        Defendant, however, fails to recognize the nature of
Capella's claim.  Here, Capella challenges Commerce's "decision
in the [Am. Final CVD Determination, 80 Fed. Reg. 69,640, Cash
Deposit Instructions, ECF No. 3-1 at attach. 18, and Refund
Instructions, ECF No. 3-1 at attach. 19] to apply the lawful

---

[13] See USCIT R. 12(b)(1) ("[A] party may assert the . . .
defense[] of. . . lack of subject matter jurisdiction [by
motion].").

[14] See 28 U.S.C. §§ 1581(i)(2), (4) (giving this Court "exclusive
jurisdiction of any civil action commenced against the United
States, its agencies, or its officers, that arises out of any
law of the United States providing for" the "administration and
enforcement" of "tariffs, duties, fees, or other taxes on the
importation of merchandise for reasons other than the raising of
revenue").

[cash] deposit rate" only prospectively, for entries made on or after November 2, 2015, given the "extreme disparity between" the 374.15 percent investigation rate and the post-MacLean-Fogg rate. Compl., ECF No. 3, at ¶ 56.[15]  As explained more fully in Capella I, __ CIT at __, Slip Op. 16-72 at 11-17, Plaintiff challenges the administration and enforcement of that CVD rate, not the CVD rate itself – specifically, Capella seeks a change in who is retroactively entitled to the benefit of the post-MacLean-Fogg rate. See Compl., ECF No. 3, at ¶¶ 39, 56..[16]

As Plaintiff's action is therefore a challenge to the "administration and enforcement" of "[CVD] duties," see 28 U.S.C. §§ 1581(i)(2), (4), and "jurisdiction under another subsection of § 1581" is not available, Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992),[17] this

---

[15] See also id. at ¶ 58 (where Plaintiff reiterates its challenge to Commerce's decision in the Am. Final CVD Determination, 80 Fed. Reg. 69,640, to make the effective date of the post-MacLean-Fogg rate November 2, 2015).

[16] The court's analysis of jurisdiction considers the "[s]ubstance, not form" of the complaint, to determine the "true nature of the action." Williams v. Sec'y of Navy, 787 F.2d 552, 557 (Fed. Cir. 1986) (internal quotation marks and citation omitted); see Hutchison Quality Furniture, Inc. v. United States, Appeal No. 2015-1900, 2016 WL 3668030 at *4 (Fed. Cir. July 6, 2016) ("Determining the true nature of an action under § 1581 requires us to discern the particular agency action that is the source of the alleged harm so that we may identify which subsection of § 1581 provides the appropriate vehicle for judicial review." (citation omitted)).

[17] Plaintiff makes an ineffective attempt to claim jurisdiction under 28 U.S.C § 1581(c). Compl., ECF No. 3, at ¶¶ 1, 38

(footnote continued)

Court has jurisdiction over Plaintiff's action pursuant to 28

U.S.C. § 1581(i). <u>Cf.</u> <u>Capella Sales & Services, Ltd. v. United</u>

---

(asserting jurisdiction under § 1581(c)); Pl.'s Opp'n To Def.'s
Mot to Dismiss, ECF No. 33 ("Pl.'s Resp."), at 21 n. 8.

    Capella argues that because it "filed comments with
Commerce regarding the effective date of the [<u>Am. Final CVD</u>
<u>Determination</u>, 80 Fed. Reg. 69,640]," and "Commerce did not
reject" those comments, Capella should be considered "a party to
the proceeding" with standing to challenge the <u>Am. Final CVD</u>
<u>Determination</u>, 80 Fed. Reg. 69,640, under § 1581(c). Pl.'s
Resp., ECF No. 33, at 21 n. 8; <u>see</u> Compl., ECF No. 3, at ¶ 58.

    "[A]ny interested party who was a party to the proceeding"
before Commerce may challenge a final CVD determination before
this Court. 28 U.S.C. § 2631(c); <u>see</u> 28 U.S.C. § 1581(c), 19
U.S.C. § 1516a(a)(2)(B)(i).  While Plaintiff is an interested
party, as an importer of aluminum extrusions, <u>see</u> 19 U.S.C. §
1677(9)(A); Compl., ECF No. 3, at ¶ 50, it was not a party to
the proceeding.   To be a "party to the proceeding" here,
Plaintiff must have "actively participate[d], through written
submissions of factual information or written argument, in a
segment of [the CVD investigation]." 19 C.F.R. § 351.102(b)(36);
<u>see also</u> <u>JCM, Ltd. v. United States</u>, 210 F.3d 1357, 1360 (Fed.
Cir. 2000).  Plaintiff did not participate in any segment of the
CVD investigation, but rather sent a letter to Commerce after
the final determination, when proceedings on the question had
already concluded. <u>Diamond Sawblades Mfrs. Coal. v. United</u>
<u>States</u>, __ CIT __, 2016 WL 2858896, at *2 (May 11, 2016) ("[T]he
Court of Appeals for the Federal Circuit has clarified that a
remand determination becomes effective on the date that the
agency files its determination with the court, not when the
court sustains the remand determination.") (citing <u>Diamond</u>
<u>Sawblades Mfrs. Coal. v. United States</u>, 626 F.3d 1374, 1378 n. 1
(Fed. Cir. 2010)); Compl., ECF No. 3, at ¶ 35 (explaining that
Capella sent its "comments" to Commerce after the court had
affirmed Commerce's final determination, <u>MacLean-Fogg VIII</u>, __
CIT __, 106 F. Supp. 3d 1356 (affirming [Fourth] Results of
Redetermination Pursuant to Ct. Remand, Consol. Ct. No. 11-209,
ECF Nos. 124-1 (conf. ver.) & 125-1 (pub. ver.)), but before
Commerce filed notice of that affirmance in the Federal
Register).  Accordingly, Plaintiff was not a party to the
proceeding, cannot bring a claim pursuant to 19 U.S.C. §
1516a(a)(2)(B)(i), and cannot assert jurisdiction for its claim
under 28 U.S.C. § 1581(c).

States, CIT Ct No. 14-304, Slip Op. 16-, (July , 2016); Snap-on,

Inc. v. United States, __ CIT __, 949 F. Supp. 2d 1346, 1352

(2013).   Whether Plaintiff is actually entitled to that "lawful

rate" absent participation in the 19 U.S.C. § 1516a(a)(2)(B)(i)

challenge that led to its adoption is another question,[18] as

discussed below.

II.   Defendant's Motion to Dismiss Pursuant to USCIT Rule
      12(b)(6) For Failure to State a Claim[19]

          As noted above, Plaintiff claims that it was

"arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law"[20] for Commerce to not retroactively apply

---

[18] Bell v. Hood, 327 U.S. 678, 682 (1946) ("Whether the complaint
states a cause of action on which relief could be granted is a
question of law and just as issues of fact it must be decided
after and not before the court has assumed jurisdiction over the
controversy.  If the court does later exercise its jurisdiction
to determine that the allegations in the complaint do not state
a ground for relief, then dismissal of the case would be on the
merits, not for want of jurisdiction." (citation omitted));
Special Commodity Grp. on Non-Rubber Footwear from Brazil, Am.
Ass'n of Exps. & Imps. v. Baldridge, 6 CIT 264, 267,
575 F. Supp. 1288, 1292 (1983) ("Whether or not a complaint
states a claim upon which relief may be granted should not be
confused with the threshold question of the jurisdiction of the
court over the subject matter.").

[19] See USCIT R. 12(b)(6) ("[A] party may assert the . . .
defense[] [of] . . . failure to state a claim upon which relief
can be granted [by motion].").

[20] Where the court has jurisdiction pursuant to 28 U.S.C. §
1581(i), it will uphold the agency's determination unless it is
"arbitrary, capricious, an abuse of discretion, or otherwise not
in accordance with law." 5 U.S.C. § 706(2)(A); see 28 U.S.C. §
2640(e) (Actions brought under § 1581(i) are reviewed "as
provided in [§] 706 of title 5.").

the post-MacLean-Fogg all-others rate (the "lawful [cash]

deposit rate") to Capella's entries, regardless of its failure

to participate in that litigation.  Plaintiff argues that its

claim is the result of the "extreme disparity" between the

applied all-others rate (374.15 percent ad valorem) and the

post-MacLean-Fogg all-others rate (7.37 percent ad valorem).

Compl., ECF No. 3, at ¶¶ 39, 56.

     But, just as in Capella I, Plaintiff has failed to

present a "legally cognizable right of action." Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks and

citation omitted); see Capella I, __ CIT at __, Slip Op. 16-72

at 17-25.  Specifically, contrary to Plaintiff's arguments,[21] 19

U.S.C. §§ 1516a(c)(1), 1516a(e) expressly and unambiguously

instruct Commerce to assess the investigation rate, not the

post-MacLean-Fogg rate, on Plaintiff's entries.[22]

     When Commerce issues a CVD order, the statute requires

---

[21] Plaintiff argues that use of the term "entries" in 19 U.S.C.
§§ 1516a(c)(1), (e) is ambiguous. Pl.'s Resp., ECF No. 33, at
28-32.  For discussion of this argument see note 26 below.

[22] Shinyei Corp. of Am. v. United States, 355 F.3d 1297, 1307-08
(Fed. Cir. 2004) ("Thus, under [19 U.S.C. § 1516a's] parallel
liquidation and injunction provisions, subject merchandise that
is entered prior to publication of the final decision of the
Court of International Trade or [the CAFC] is liquidated as
entered unless liquidation is enjoined.  In contrast,
merchandise entered after the final decision of the Court of
International Trade or [the CAFC] must be liquidated in
accordance with that final decision." (citing 19 U.S.C. §§
1516a(c), 1516a(e))).

"the posting of a cash deposit, bond, or other security . . .

for each entry of the subject merchandise in an amount based on

the [applicable] estimated [rate]," here, the all-others rate,

as calculated in the precipitating investigation. 19 U.S.C.

§ 1671d(c)(1)(B)(ii); see also id. at § 1671e(a)(3).  This

estimated rate is called the cash deposit rate.[23]  The cash

deposit rate is not necessarily the rate at which an entry is or

will be liquidated.[24]  Rather, it may be appealed to this Court.

19 U.S.C. § 1516a(a)(2)(A)(i)(II).  If such an appeal results in

a revised rate, then those entries for which liquidation is

enjoined pursuant to that appeal will be liquidated at the

revised rate. Id. at § 1516a(e)(2).  This is what the plaintiffs

in MacLean-Fogg, Consol. Ct. No. 11-209 accomplished for their

covered entries.[25]

---

[23] See Decca Hosp. Furnishings, LLC v. United States, 30 CIT 357,
358, 427 F. Supp. 2d 1249, 1251 (2006) ("As mentioned, the cash
deposit rate is merely an estimate of the eventual liability
importers subject to an antidumping duty order will bear.
Because the rate established by the final determination is based
on past conduct, i.e., conduct occurring before the final
determination, interested parties to an antidumping duty
proceeding may ask Commerce to annually review the antidumping
duty order in light of an importer's current practices."
(citations omitted)).

[24] See Sioux Honey Ass'n v. Hartford Fire Ins. Co., 672 F.3d
1041, 1047 (Fed. Cir. 2012) ("[T]he cash deposits collected upon
entry are considered estimates of the duties that the importer
will ultimately have to pay as opposed to payments of the actual
duties.").

[25] See MacLean-Fogg VIII, 106 F. Supp. 3d at 1357 (ordering that
"any entries covered by Section 516A(e)(1) of the Tariff Act of
(footnote continued)

"Unless [] liquidation is enjoined by the court [in a
pending appeal], entries of merchandise of the character covered
by [Commerce's appealed] determination" that were entered "on or
before the date of publication in the Federal Register by
[Commerce] of a decision of the [USCIT or CAFC] not in harmony
with that determination" are "liquidated in accordance with
[Commerce's original] determination." 19 U.S.C. § 1516a(c)(1).
Those entries for which "liquidation . . . was enjoined" or that
were made "after the date of publication in the Federal
Register" of the notice, are "liquidated in accordance with the
final court decision in the action." Id. at § 1516a(e); see
Snap-on, __ CIT at __, 949 F. Supp. 2d at 1354.[26]

---

1930, as amended, 19 U.S.C. § 1516a(e)(1) (2012), are to be
liquidated in accordance with this judgment").

[26] Plaintiff argues that the "term 'entries' in 19 U.S.C. §
1516a(c)(1) is ambiguous," Pl.'s Resp., ECF No. 33, at 28,
because the statute "is silent" as to whether § 1516a(c)(1)
"extends to *all* remaining entries that entered on or before the
date of the Timken Notice, or just to a subset of [] these
entries," id. at 30, and § 1516a(e) "neither requires nor
prevents the new rate of the final court decision from being
applied retroactively to earlier entries," id. at 29 (emphasis
original). Plaintiff believes that "[t]he omission of the word
'all'" from 19 U.S.C. § 1516a(c)(1) "removes the terms 'entries'
from under the oft-cited rule that 'all means all.'" Id. (citing
Knott v. McDonald's Corp., 147 F.3d 1065, 1067 (9th Cir. 1998)).
     Try as Plaintiff might, "[a]mbiguity is a creature not of
definitional possibilities but of statutory context." Brown v.
Gardner, 513 U.S. 115, 118 (1994) (citation omitted).
Plaintiff's "'all means all' rule" is not a rule at all, but a
by-product of the plain meaning rule. Knott, 147 F.3d at 1067
(finding that use of the word "all" in a contract was
unambiguous on the contract's face and therefore binding on the
                                           (footnote continued)

In the alternative, or in addition, an interested

party may challenge the cash deposit rate by requesting Commerce

conduct an administrative review of its entries that were

subject to that cash deposit rate – to calculate the actual

rate. 19 U.S.C. § 1675(a)(1).  A review must be requested. Id.[27]

If it is not, entries are liquidated at the cash deposit rate.

19 U.S.C. § 1675(a)(2)(C); Mitsubishi Elecs. Am., Inc. v. United

States, 44 F.3d 973, 976–77 (Fed. Cir. 1994).

---

parties thereto).  And the plain meaning here leaves Plaintiff's
arguments meritless.

    Read as a whole, in context, 19 U.S.C. § 1516a is not
silent or ambiguous, but rather plain and direct. See Robinson
v. Shell Oil Co., 519 U.S. 337, 340-41 (1997) ("The plainness or
ambiguity of statutory language is determined by reference to
the language itself, the specific context in which that language
is used, and the broader context of the statute as a whole."
(citations omitted)).  Section 1516a(c)(1) provides that
"entries" of subject merchandise made "on or before the date of
publication in the Federal Register by [Commerce] of a [Timken
Notice]" "shall be liquidated in accordance with [Commerce's]
determination," "[u]nless such liquidation is enjoined by the
court [in a pending appeal]." The language is clear and
imperative.  Commerce "shall" liquidate entries matching the
statutory description – subject to the order, made prior to the
Timken notice, and un-enjoined in a pending litigation – in
accordance with Commerce's determination.  This statutory
directive is without ambiguity and Commerce is without
discretion.  Section 1516a(e) lists which "entries" are to be
"liquidat[ed] in accordance with [the] final [court] decision"
in an appeal: those made "after the date of" the Timken Notice
and "the liquidation of which was enjoined" pursuant to the
appeal. 19 U.S.C. § 1516a(e).  The list is closed; Congress left
no discretion to Commerce to expand it. *Expressio unius est
exclusio alterius*.  Plaintiff's argument thus fails.
[27] See Asociacion Colombiana de Exportadores de Flores v. United
States, 916 F.2d 1571, 1576 (Fed. Cir. 1990).

Plaintiff, by its own admission in its complaint, did

not participate in the litigation challenging the Final CVD

Determination rate, MacLean-Fogg, Consol. Ct. No. 11-209;

liquidation of its entries was never enjoined pursuant to that

litigation. See Compl., ECF No. 3, at ¶ 7.[28]  Further, and again

by Plaintiff's own admission in its complaint, Plaintiff did not

participate in either administrative review relevant to its

entries. Compl., ECF No. 3, at ¶¶ 10, 22.[29]  Plaintiff has

thereby "plead [it]self out of court by alleging facts that show

there is no viable claim." Pugh v. Tribune Co., 521 F.3d 686,

699 (7th Cir. 2008) (citation omitted).  Specifically, by the

plain statutory language "entries of merchandise of the

---

[28] Plaintiff asserts that it did not know about the Final CVD
Determination, CVD Order, and subsequent first review because
its customs broker did not advise it of such. Compl, ECF No. 3,
at ¶¶ 7, 10.  However, publication in the Federal Register of
the Final CVD Determination, CVD Order and opportunity for
administrative review, see CVD Order, 76 Fed. Reg. 30,653;
Antidumping or Countervailing Duty Order, Finding, or Suspended
Investigation; Opportunity to Request Administrative Review, 77
Fed. Reg. 25,679, 25,680 (Dep't Commerce May 1, 2012) (providing
notice of opportunity to request first administrative review);
Antidumping or Countervailing Duty Order, Finding, or Suspended
Investigation; Opportunity To Request Administrative Review, 78
Fed. Reg. 25,423, 25,424 (Dep't Commerce May 1, 2013) (providing
notice of opportunity to request second administrative review),
is "sufficient to give notice of the contents of the document to
a person subject to or affected by it," 44 U.S.C. § 1507, such
as Capella, see Deseado Int'l, Ltd. v. United States, 600 F.3d
1377, 1380 (Fed. Cir. 2010); Stearn v. Dep't of Navy, 280 F.3d
1376, 1384-85 (Fed. Cir. 2002); Royal United Corp. v. United
States, 34 CIT 756, 767-68, 714 F. Supp. 2d 1307, 1318 (2010).
[29] Hemi Grp., LLC v. N.Y.C., 559 U.S. 1, 5 (2010) (holding that
all the factual allegations in the complaint are taken as true).

character covered by" the Final CVD Determination, entered "on

or before the date of publication in the Federal Register" of

the Am. Final CVD Determination, for which "liquidation [has not

been] enjoined" in the appeal of the Final CVD Determination,

MacLean-Fogg, Consol Ct. No. 11-209, must be "liquidated in

accordance with the [Final CVD Determination]," 19 U.S.C. §§

1516a(c)(1), 1516a(e),[30] absent a request for administrative

review, 19 U.S.C. §§ 1675(a)(1), 1675(a)(2)(C).  All of

Plaintiff's entries at issue here were made prior to the Am.

Final CVD Determination, 80 Fed. Reg. 69,640, see CBP Forms

7501, reproduced in Compl., ECF No. 3-1 at attach. 5; Protest,

4601-14-101149 (July 14, 2014), reproduced in Compl., ECF No. 3-

1 at attach. 15, and their liquidation was not enjoined pursuant

to the MacLean-Fogg litigation, see Compl., ECF No. 3, at ¶ 7.

Plaintiff did not seek administrative review of its entries. Id.

at ¶¶ 10, 22.[31]  Accordingly, the only lawful rate for

---

[30] See Asociacion Colombiana, 916 F.2d at 1577 ("We do not
question the authority of [Commerce], pursuant to its
regulation, to liquidate entries for an annual review period at
the rate set in the original antidumping duty order when there
has been no challenge to the validity of that order and no
request for an annual review."); Snap-on, 949 F. Supp. 2d at
1354.

[31] Plaintiff's letter to Commerce, Letter from Capella to
Commerce (Oct. 29, 2015), reproduced in Compl., ECF No. 3-1 at
attach. 17, has no effect on this conclusion. It does not change
the fact that Plaintiff did not participate in the underlying
proceedings, see supra note 8, nor have liquidation of its
entries enjoined pursuant MacLean-Fogg, Consol. Ct. No. 11-209.

Plaintiff's entries, the rate required by statute, is the rate

as calculated in the <u>Final CVD Determination</u>, 374.15 percent ad

valorem. <u>See</u> 19 U.S.C. §§ 1516a(c)(1), 1516a(e), 1675(a)(1),

1675(a)(2)(C).

      "Congress has directly spoken to the precise question

at issue," <u>Chevron, U.S.A., Inc. v. Nat. Res. Def. Council,</u>

<u>Inc.</u>, 467 U.S. 837, 842 (1984), and Commerce, having complied

with that directive for Plaintiff's entries, has made a

determination in accordance with law, that is neither arbitrary

and capricious[32] nor an abuse of discretion.[33]  Plaintiff has "not

based its claim for relief on a plausible legal theory."

<u>Hutchison</u>, 2016 WL 3668030 at *5 n. 4.  Its complaint must be

dismissed for failure to state a claim upon which relief can be

granted. USCIT Rule 12(b)(6).[34]

---

[32] <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut.</u>
<u>Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983) ("Normally, an agency
rule would be arbitrary and capricious if the agency has relied
on factors which Congress has not intended it to consider,
entirely failed to consider an important aspect of the problem,
offered an explanation for its decision that runs counter to the
evidence before the agency, or is so implausible that it could
not be ascribed to a difference in view or the product of agency
expertise.").

[33] <u>Star Fruits S.N.C. v. United States</u>, 393 F.3d 1277, 1281 (Fed.
Cir. 2005) ("An abuse of discretion occurs where the decision is
based on an erroneous interpretation of the law, on factual
findings that are not supported by substantial evidence, or
represents an unreasonable judgment in weighing relevant
factors." (citation omitted)).

[34] Plaintiff's various other arguments regarding the
reasonableness of Commerce's determination, <u>see</u> Pl.'s Resp., ECF

(footnote continued)

**CONCLUSION**

Because Plaintiff did not participate in the <u>MacLean-Fogg</u> litigation, and did not have liquidation of entries enjoined pursuant thereto, it cannot, claim entitlement to the rate as calculated therein on remand and redetermination.  19 U.S.C. §§ 1516a(c)(1), 1516a(e)(2); Compl., ECF No. 3, at ¶ 7. As such, Plaintiff has failed to state a claim upon which relief can be granted; Defendant's motion to dismiss under USCIT Rule 12(b)(6) is therefore granted.[35]   Judgment will be entered accordingly.

/s/Donald C. Pogue
Donald C. Pogue, Senior Judge

Dated: September 14, 2016
       New York, NY

---

No. 33, at 32-41, are, as such, irrelevant here. Where Congress has "directly spoken to the precise question at issue," where "the intent of Congress is clear," then "that is the end of the matter." <u>Chevron</u>, 467 U.S. at 842.  "[T]he court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." <u>Id.</u> at 842-43.

[35] <u>Cf.</u> <u>Capella I</u>, __ CIT __, Slip Op. 16-72.